IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

J&J SPORTS PRODUCTIONS, INC.,

    Plaintiff,

    v.

KEVIN FIALKO, *et al.*,

    Defendants.

Case No. 17 C 3275

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Defendant Kevin Fialko's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 7] is granted. Plaintiff J&J Sports Productions, Inc.'s claims against Mr. Fialko are dismissed without prejudice.

### I. STATEMENT

According to the Complaint [ECF No. 2], Plaintiff J&J Sports Productions, Inc. ("J&J") paid for and obtained the exclusive nationwide television distribution rights to a May 2, 2015, championship fight between Floyd Mayweather, Jr. and Manny Pacquiao (the "Program"). J&J alleges that without authorization, Defendants intercepted the fight broadcast and showed it at the Prohibition Junction Sports Bar and Grill in Oswego, Illinois. (*See,* Compl. ¶ 21.) J&J accordingly brought this action against Defendants, alleging violations of the Communications Act of 1934, 47 U.S.C. § 605 *et seq.*, and the Cable and Television Consumer Protection and

Competition Act of 1992, 47 U.S.C. § 553 *et seq.* Defendants moved this Court to dismiss J&J's claims against Defendants Kevin Fialko ("Fialko") and Mattoon Investments, LLC ("Matoon") for lack of personal jurisdiction. (J&J's Mot., ECF No. 7.) Both parties subsequently stipulated to Mattoon's dismissal. The Court now considers Fialko's Rule 12(b)(2) motion.

## II. DISCUSSION

A lengthy analysis is not necessary here. The jurisdictional allegations in the Complaint are taken as true unless controverted by the defendant's affidavits, *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir. 1987), *superseded on other grounds,* and any conflicts among affidavits must be resolved in the plaintiff's favor. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir. 1997). The plaintiff bears the burden of providing sufficient evidence to establish a *prima facie* case for personal jurisdiction. *Id.* at 1276. J&J has not met its burden here, so Fialko's Motion to Dismiss is granted.

In federal question cases such as this one, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.,* 623 F.3d 440, 443 (7th Cir. 2010) (citation omitted). Where, as here, the federal statutes at issue do not authorize nationwide service of process, *see,* 47 U.S.C. § 605 *et seq.;* 47 U.S.C. § 553 *et seq.*, the Court may exercise

jurisdiction over the defendants only "if it would be permitted to do so under the Illinois long-arm statute." *uBID, Inc. v. GoDaddy Group, Inc.,* 623 F.3d 421, 425 (7th Cir. 2010) (citing F%ED%. R. C%IV%. P. 4(k)(1)(A)). Illinois's long-arm statute permits the exercise of personal jurisdiction if it would be allowed under either the Illinois Constitution or the United States Constitution. *See,* 735 Ill. Comp. Stat. 5/2-209(c). Accordingly, "the state statutory and federal constitutional requirements merge." *uBID, Inc.,* 623 F.3d at 425 (citing *Illinois v. Hemi Grp. LLC,* 622 F.3d 754, 756-57 (7th Cir. 2010)) (citation omitted).

Personal jurisdiction may be "general" or "specific." General jurisdiction lies only where the defendant has "continuous and systematic" contacts with the forum state. *See, Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984). Defendants subject to general jurisdiction may be haled into court "for any alleged wrong . . . no matter how unrelated to the defendant's contacts with the forum." *uBID, Inc.,* 623 F.3d at 426 (citation omitted). In contrast, specific jurisdiction is more limited. Specific jurisdiction lies for controversies that arise out of or are related to the defendant's forum contacts. *See, Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). Even if a court finds that it has general or specific jurisdiction over a defendant, the court must still determine whether exercising personal jurisdiction would comport with "fair play and substantial justice."

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 320 (1945)).

Because Fialko has brought a 12(b)(2) motion, it is J&J's burden to provide a *prima facie* case for personal jurisdiction. *uBID, Inc.,* 623 F.3d at 423. As this Court sees it, J&J's arguments for sufficient minimal contacts fall into two different groups. In the first, J&J argues for the Court's exercise of personal jurisdiction because Mr. Fialko transacts business, owns real estate, and made or performed a contract or promise in Illinois. (*See,* J&J's Resp. at 2-4.) All of these alleged Illinois contacts are predicated upon the Prohibition Junction's liquor license application, which J&J reads as evidence that Mr. Fialko owns the bar. (*Id.* at 3, 4, 7.) In its second group of arguments, J&J maintains that Mr. Fialko is susceptible to personal jurisdiction because he committed a tortious activity in Illinois by either personally publishing the Program at the Prohibition Junction on May 2, 2015, or else by directing said publication from afar. (*Id.* at 4, 6.)

To support its first group of arguments, J&J submits the Village of Oswego liquor license application for Prohibition Junction, which J&J holds out as proof of Mr. Fialko's sufficient contacts with Illinois. Some description of that application will be helpful: Mr. Fialko apparently filled it out, seeking a liquor license for "Oswego Junction Enterprises LLC d.b.a. Prohibition Junction Sports Bar and Grill." (Liquor Lic. App., Ex. 3 to J&J's Resp. at 1, ECF 13-3.) Mr. Fialko wrote his own name on the line labeled "Applicant Name,"

and then later answered "Yes" to the question, "Does the applicant own the premises?" (*Id.* at 1, 3.) Elsewhere on the application, Mr. Fialko wrote in "Oswego Junction Enterprises LLC" as the "Business Owner Name." (*Id.* at 1.) J&J argues that this license application evinces Mr. Fialko's ownership of the Prohibition Junction premises (which are Illinois real estate) and thus that he has sufficient in-state minimum contacts to fall within the Court's personal jurisdiction. *See,* 735 ILCS 5/2-209(a)(3).

But there is a problem. Mr. Fialko asserts that he does not own the Prohibition Junction premises and that his answers on the liquor license application do not indicate otherwise. (Fialko's Reply at 3-5, ECF No. 14.) Instead, he asserts that the Prohibition Junction premises are owned by Oswego Junction, LLC, which is in turn fully owned and managed by former Defendant Mattoon Investments, of which Mr. Fialko is a member and director. (*Id.* at 3.) The Court will not now reiterate all of Mr. Fialko's justifications for his imprecise answer on the liquor license application. Simply put, he argues that answering "Yes" to the ownership question was shorthand; he answered as the director and representative of Mattoon, which fully and solely owns Oswego Junction, LLC, which owns the premises. (*Id.* at 4-5.) Mr. Fialko further states that the Prohibition Junction business entity (as opposed to the business's premises) is owned by Mattoon directly. (*Id.*) Finally, Mr. Fialko submits documents from the Office of the Illinois Secretary of State showing that both Oswego Junction Enterprises, LLC (d/b/a Prohibition Junction Sports Bar and

Grill) and Oswego Junction, LLC are solely managed by Mattoon. (Oswego Junction Enters. Detail Rpt., ECF No. 14-1; Oswego Junction Detail Rpt., ECF No. 14-2.)

From the documents presently available to the Court, Mr. Fialko does not appear to be the owner of either the Prohibition Junction or its premises. The Court does not view this disagreement over ownership as a "conflict" that must be resolved in J&J's favor. *RAR, Inc.,* 107 F.3d at 1275. Rather, it appears that given Mr. Fialko's shorthand completion of the liquor license application, J&J simply misunderstood the true ownership of the Junction's premises. As such, J&J has not established that Mr. Fialko owns real estate in Illinois.

Further, Mr. Fialko's controlling interest in Mattoon is not enough to bring Mr. Fialko within this Court's personal jurisdiction. *See, Cent. States v. Reimer Express World Corp.,* 230 F.3d 934, 943 (7th Cir. 2000) ("[C]orporate ownership alone is not sufficient for personal jurisdiction."); *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.,* No. 06 C 3183, 2007 WL 1560212, at *3 (N.D. Ill. May 29, 2007) (finding lack of personal jurisdiction over individual with controlling interest in corporate entity that allegedly committed torts in Illinois when plaintiff failed to establish that individual purposefully directed the entity's business activities in Illinois).

In its second group of arguments, J&J insists that Mr. Fialko is susceptible to personal jurisdiction because he committed a tortious act in Illinois. (J&J's Resp. at 4.) But J&J utterly fails to set forth how or when Mr. Fialko committed any such tort. Initially,

J&J's Complaint asserted that Mr. Fialko published, divulged, and exhibited the Program at the Prohibition Bar & Grill. (Compl. ¶¶ 21, 27.) But in his affidavit, Mr. Fialko asserts that he was out of the country on the day of the Program and that he did not cause the Program to be exhibited at any location. (Fialko Aff., Ex. B to Fialko's Mot. ¶¶ 8-9, ECF No. 7-2.) J&J does not respond with even vague assertions to the contrary. Instead, J&J merely complains: "Fialko cannot seriously be suggesting that, in 2017, it is not possible to operate a business remotely." (J&J's Resp. at 6.) Yet Mr. Fialko does not argue that he *could not* have directed the activities in the Prohibition Junction on May 2nd, only that he *did not*. J&J does not advance how, when, or even if Mr. Fialko directed the exhibition of the Program from abroad. J&J cries that Mr. Fialko should still be liable for tortious acts committed at the Prohibition Junction even in his absence. (J&J's Resp. at 6.) This may well be true in some contexts, but this Court may not find Mr. Fialko liable for anything before J&J puts forth a *prima facie* case for personal jurisdiction.

It is true that the Court must take conflicts of fact in favor of the plaintiff. *RAR, Inc.*, 107 F.3d at 1275. But this does not mean that the Court must take at face value every undeveloped hypothetical the plaintiff advances. Further jurisdictional analysis is not required. J&J has failed to meet its burden to put forth a *prima facie* case for this Court's exercise of personal jurisdiction over Mr. Fialko. Accordingly, Mr. Fialko's Motion is granted and J&J's claims

against him are dismissed without prejudice. If J&J has a clearer vision of Mr. Fialko's contacts with the state of Illinois, J&J may feel free to articulate them in an amended complaint.

Lastly, J&J asks the Court to permit jurisdictional discovery. (Resp. at 10-11.) Though the Court has the discretion to do so, it will not here. *See, Reimer Express,* 230 F.3d at 946 (noting that standard of review on appeal is abuse of discretion). To warrant such discovery, the plaintiff must at minimum establish a colorable or *prima facie* showing of personal jurisdiction. *Id.* (citation omitted). Generally, courts will grant jurisdictional discovery if the plaintiff can show the factual record is at least ambiguous or unclear on the jurisdictional issue. *See, e.g., In re Testosterone Replacement Therapy Prod. Liab. Litig.,* 136 F.Supp.3d 968, 973 (N.D. Ill. 2015); *Gilman Opco LLC v. Lanman Oil Co.,* No. 13-CV-7846, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014). This is a low hurdle to clear, but J&J has not made it over.

Had Mr. Fialko not pointed out that he does not in fact own the Prohibition Junction or its premises, J&J's argument would yet fly. But Mr. Fialko owns neither, and he filled out the liquor license application only as the director of the LLC that does. J&J has not explained away Mr. Fialko's affirmations on these points. Next, J&J claims Mr. Fialko committed an in-state tort. Yet J&J's only support for Mr. Fialko's alleged tort is a reference (*see,* J&J's Resp. at 4) to its Complaint, which contains a bare assertion that each Defendant published, divulged, and exhibited the Program unlawfully. (Compl.

¶¶ 21-23, 27-29.) J&J puts forth no explanation as to how Mr. Fialko allegedly accomplished this given his unrebutted affirmation that he was out of the country on the date the Program aired. The law J&J cites on this point is similarly unhelpful; none of those cases rule on 12(b)(2) motions, and they are irrelevant here. *See, Joe Hand Promotions, Inc. v. Tickle,* 2016 WL 393797 (M.D.Pa. Feb 2, 2016); *J&J Sports Prods., Inc. v. Ruiz,* 2015 WL 587060 (N.D. Ill. Feb. 11, 2015); *Joe Hand Promotions, Inc. v. Jorgenson,* 2013 WL 64629 (E.D. Wis. Jan. 4, 2013). J&J has not shown that the record is unclear on the jurisdictional issue, so J&J's request for leave to conduct jurisdictional discovery is denied.

### III. CONCLUSION

For the reasons stated herein, Defendant Kevin Fialko's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 7] is granted. Plaintiff J&J's claims against him are dismissed without prejudice.

**IT IS SO ORDERED.**

 Harry D. Leinenweber, Judge
 United States District Court

Dated: 1/26/2018